AO106 (Rev. 12/03) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

__SOUTHERN__ DISTRICT OF __CALIFORNIA__

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

One (1) Blue Samsung Cellular Telephone
Serial Number: RV6XB17459F

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

Case Number: '08 MJ 8293

I, __CRAIG MOORE__ being duly sworn depose and say:

I am a(n) __Task Force Officer with Drug Enforcement Administration__ and have reason to believe
Official Title

that ☐ on the person of or ☑ on the property or premises known as (name, description and/or location)

REFER TO ATTACHMENT A

in the __SOUTHERN__ District of __CALIFORNIA__

there is now concealed a certain person or property, namely (describe the person or property to be seized)

REFER TO ATTACHMENT B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

electronic data that constitutes evidence of a criminal offense, and electronic data which is
and has been used as the means for committing a cirminal offense.

concerning a violation of Title __21__ United States code, Section(s) __841(a)(1), 846, 952, 960, 963__

The facts to support a finding of probable cause are as follows:

REFER TO ATTACHED AFFIDAVIT OF DEA TASK FORCE OFFICER MOORE.

FILED
APR 03 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Continued on the attached sheet and made a part hereof:   ☑ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

__4-3-08 @ 10:35 a.m.__   at   __EL CENTRO__   __CALIFORNIA__
Date                                          City                State

Peter C. Lewis           U.S. Magistrate Judge       _____
Name of Judge            Title of Judge              Signature of Judge

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

One blue Samsung cellular phone (Serial Number RV6XB17459F) without photo capabilities, that was found on the person of Jonathan Anglin at 920 Highway 98, Ocotillo, California.

The cellular telephone to be searched is currently located at the DEA Imperial County District Office, Imperial, California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Any and all electronically stored information in said cellular phone, including:

- a. telephone numbers of incoming/outgoing calls stored in the call registry
- b. telephone numbers and corresponding names to those numbers stored in the cellular telephone's address book;
- c. any incoming/outgoing text messages which evidences the relationship between the existence of a conspiracy to import, possess or sell controlled substances in violation of 21 U.S.C. §§ 841(a)(1), and 846
- d. telephone subscriber information; and
- e. any other electronic information in the stored memory and/or accessed by the active electronic features of the digital or cellular phone including photographs, e-mail, and voicemail which evidences the existence of a conspiracy to import, possess, sell, and distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), and 846

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of<br><br>One Samsung Cellular Telephone<br>Serial Number: RV6XB17459F<br>Blue in color, without photo capability | ) Magistrate Case No.: _____<br>)<br>) **AFFIDAVIT OF DEA TASK FORCE**<br>) **OFFICER CRAIG MOORE, IN SUPPORT**<br>) **OF SEARCH WARRANT APPLICATION**<br>) |

I, Craig Moore, being first duly sworn, hereby depose and say:

# I

# PURPOSE

1. This affidavit is made in support of an application for search warrants for federal agents to search the following cellular telephone for electronic data that constitutes evidence of the commission of a criminal offense, and electronic data which is and has been used as the means for committing a criminal offense: blue in color "Samsung" cell phone, without photo capability, Serial Number: **RV6XB17459F**.

# II

# INTRODUCTION

2. I am a Special Agent (SA) with the Bureau of Land Management (BLM), United States Department of the Interior, and have been so employed for approximately five years. I am also currently assigned as a Task Force Officer with the Drug Enforcement Administration (DEA), Imperial County District Office. I have approximately sixteen years experience as a Federal law enforcement officer.

1

3. I have been working in the law enforcement profession almost exclusively since June 1991 and have approximately two thousand hours of basic and advanced law enforcement training from various state and federal entities. I am a graduate of the United States Army Military Police School, and a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program. As a result of my training and experience as a BLM Special Agent, I am familiar with federal and state criminal laws. I have received training in identifying various controlled substances and the conduct of controlled substances (Title 21) investigations. I have spoken with other agents with extensive experience in controlled substances investigations.

4. As a result of 16 years of law enforcement experience, your affiant has personally arrested or participated in the arrest of over one hundred (100) persons for violations of various federal and state narcotics laws. In each of these cases, your affiant has conducted interviews with the arrested persons and with their associates. Through these interviews, your affiant has gained a working knowledge and insight into the typical working of controlled substance traffickers and smugglers. Your affiant has also gained extensive information as to the normal operational habits of persons who make their living as controlled substance traffickers.

5. Through the course of your affiant's duties, your affiant has talked with experienced controlled substances investigators about the activities of controlled substances traffickers and your affiant has received on the job training dealing with the activities of controlled substances traffickers practiced locally. Your affiant is aware that it is a common practice for controlled substances traffickers to have, own, or use cellular telephones, computers, pagers and portable radios to maintain communications with co-conspirators to further their criminal activities. Your affiant has

made numerous arrests for violations of 21 United States Code, and is familiar with the identification of all types of controlled substances by sight and color.

6. As a BLM Special Agent and DEA Task Force Officer, your affiant is authorized to investigate violations of laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

7. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Possession of Marijuana with Intent to Distribute, as defined in Title 21, United States Code, Section 841(a)(1), Aiding and Abetting, as defined in Title 18, United States Code, Section 2, and Conspiracy to Possess Marijuana with Intent to Distribute, as defined in 21 United States Code, Section 846, may be found in the above property, specifically in electronic form.

8. Based upon my training and experience as a special agent, consultations with other special agents and law enforcement officers experienced in controlled substance trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Controlled substance traffickers will use cellular phones because they are mobile and they have instant access to phone calls and voice messages;

    b. Controlled substances traffickers use cellular phones to communicate with drivers vehicles containing narcotics to monitor the vehicles' progress and provide information and instructions to the drivers, e.g., to tell the drivers where to take the vehicles upon entering the United States;

c.  Controlled substance traffickers believe that cellular phones provide greater insulation and protection against court-ordered wiretaps and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination phone numbers of calls placed to and from their cellular phones;

d.  Federal agents will deliver the cellular phone to cellular phone forensic examiners at the Drug Enforcement Administration, San Diego Field Division. These examiners may be able to determine the personal identification number, turn on the cellular phone, and retrieve data from the cellular phone. Unlike typical computers, cellular phones do not have hard drives and store information in volatile memory.

## III

### SUMMARY OF INVESTIGATION / FACTS SUPPORTING PROBABLE CAUSE

9.  During the course of my duties, I have learned the following information based upon my personal investigation, discussions with agents and/or by reading other agents' reports. In addition to my own law enforcement training and experience, I have consulted with, law enforcement professionals from the United States Department of Justice, Drug Enforcement Administration (DEA), with regard to this investigation. I have personally participated in this investigation and am familiar with the facts and circumstances of this investigation. Information obtained in this affidavit has either been through personal observation or information supplied to me by law enforcement personnel who are directly involved in this investigation.

10.  The information set forth below is provided as a broad overview of the investigation conducted to date by the Drug Enforcement Administration. It does not include a listing of all

investigative techniques employed or even the full and complete results of any of the listed investigative efforts.

11. On November 21, 2007, U.S. Department of the Interior, Bureau of Land Management (BLM) Law Enforcement Ranger John Ryfa a sworn federal law enforcement officer charged with the protection of public lands, was working uniformed law enforcement patrol on public lands within Western Imperial County, California.

12. At approximately 2:30 p.m., Ranger Ryfa attempted to conduct a traffic stop on a 1992 Ford F-250 bearing California registration 5U61468 for erratic operation on Split Mountain Road. Upon attempting to stop the vehicle, the operator refused to yield and a lengthy pursuit ensued. Ranger Ryfa lost sight of the vehicle for a very short period of time, but located the vehicle abandoned and stuck in the sand in the desert. Ranger Ryfa approached the vehicle and found that two individuals had fled from the vehicle on foot. Ranger Ryfa searched the area but was unable to locate the occupants. Ranger Ryfa then returned to the vehicle and discovered a large green duffle bag within the passenger compartment of the vehicle. Upon opening the bag, Ranger Ryfa observed bundles of marijuana.

13. On 11/21/07, at approximately 3:30 p.m., Ranger John Ryfa told DEA Task Force Officer (TFO) Craig Moore that four bundles of marijuana, with an undetermined weight, was seized from within the vehicle.

14. At approximately 5:30 p.m., TFO Moore and DEA S/A Jeff Butler arrived at the location of the seizure and met with BLM Ranger John Ryfa, who related what had transpired up to that point. TFO Moore then obtained the bundles of marijuana from Ranger Ryfa. The vehicle was removed

from the scene by Beach and Son's towing and stored in El Centro, CA.

15. TFO Moore conducted a records check on the 1992 Ford, bearing California license number 5U61468 that was abandoned at the scene. Upon conducting the check, TFO Moore found that the vehicle is owned by, and registered to Jerry and Julia Prado, P.O. Box 228, Ocotillo, California 92259.

16. At approximately 9:20 P.M., TFO Moore and SA Butler arrived at 920 Highway 98, Ocotillo, California, and met with Jerry PRADO. Upon contact with PRADO, he stated the following: *On the morning of November 21, 2007, PRADO had lent his truck to his step son, Jonathan P. ANGLIN. ANGLIN departed the residence at approximately 11:00 A.M with a friend named "Richie" (NFI). ANGLIN told PRADO that he was going to drive to the Superstition Mountain Off Highway Vehicle Area and would return later in the day. At approximately 3:00 P.M., his wife Julia PRADO received a call from ANGLIN, stating that he was walking in the desert and that the truck had been stolen from atop a hill within the Superstition Mountain Off Highway Vehicle Area when he left it unattended with the keys in it and that an unknown male had picked him (ANGLIN) up in a sand buggy and that they had chased the truck, but the owner of the sand buggy abruptly kicked him out of the buggy because it was almost out of gas, and left him in the desert alone.* Based on the information he had received, Jerry PRADO then called the California Highway Patrol and reported the vehicle stolen. (Agent's Note: at approximately 8:55 P.M. the El Centro Highway Patrol responded to the Prado residence to receive the report).

17. While at the PRADO residence, TFO Moore and S/A Butler also interviewed Julia PRADO.

6

Upon interviewing PRADO, she stated the following: *On the morning of November 21, 2007, her son, Jonathan ANGLIN had borrowed his step father's truck earlier in the day and had departed the residence at approximately 11:00 A.M with a friend named "Richie" (NFI). ANGLIN told PRADO that he was going to drive to the Superstition Mountain Off Highway Vehicle Area and would return later in the day. At approximately 3:00 P.M., she received a call from ANGLIN stating that he was walking in the desert and that the truck had been stolen from atop a hill within the Superstition Mountain Off Highway Vehicle Area when he left it unattended with the keys in it. ANGLIN further told PRADO that an unknown male had picked him (ANGLIN) up in a sand buggy and that they had chased the truck, but the owner of the sand buggy abruptly kicked him out of the buggy because it was almost out of gas, and left him in the desert alone.* Julia PRADO further stated that while talking to ANGLIN, the cell reception was very poor and that ANGLIN was short of breath and sounded like he had been running. Julia PRADO told TFO Moore and S/A Butler that she had recently received a call from ANGLIN and that ANGLIN had told her that a friend of his had picked him up and that he was returning home. PRADO stated that ANGLIN would be traveling back to the residence in a white in color Volvo car.

18. On November 21, 2007, at approximately 10:30 P.M., TFO Moore and S/A Butler observed a white in color Volvo enter the driveway to the PRADO residence, at which time contact was made with the operator of the vehicle identified as Leslie P. PARSONS. TFO Moore told PARSONS that he was not under arrest, but he wanted to ask him a few questions regarding the passengers in his vehicle. PARSONS agreed to be interviewed, and stated the following: *Jonathan ANGLIN had called him on his cell phone at approximately 8:00 P.M. earlier in evening. ANGLIN told*

7

*PARSONS that he was in the desert and that he needed to be picked up on highway 78. The call was then terminated and PARSONS departed his residence. He then stopped in Westmorland, CA to pick up a friend, identified as Tyre H. HARRISON. PARSONS then continued to travel North on Highway 86 until he reached Highway 78. PARSONS then received a second phone call from ANGLIN asking where he was. PARSONS told him he was almost there. He then continued West on Highway 78. PARSONS then received a third call from ANGLIN stating that he had just passed him (ANGLIN) and that he (PARSONS) needed to turn around. PARSONS turned around at the Blue Inn and picked ANGLIN up east of the Blue Inn on Highway 78. When ANGLIN got into PARSONS car, he stated that he was tired and needed water. ANGLIN told PARSONS that he got into some trouble and needed to ditch his truck and that he has to report it stolen. He told PARSONS "It's Gone". ANGLIN also told PARSONS that his friend is still out there and that he needed to get home.* The interview was then concluded. (Agent's note: The area along highway 78 where the Blue Inn is located and where ANGLIN was picked up, is approximately 3-4 miles away from the location of the seizure).

19. TFO Moore asked PARSONS if the individual he picked up along highway 78 is still in his vehicle. PARSONS then pointed to a male passenger in the vehicle and said "that's him there." I then asked PARSONS if the individual he pointed at was Jonathan ANGLIN and he stated "yes."

20. At 11:10 P.M., TFO Moore and SA Butler interviewed an additional passenger in the vehicle, identified as Tyre H. HARRISON. TFO Moore told HARRISON that she was not under arrest, but he wanted to ask her a few questions. HARRISON agreed to be interviewed, and stated the following: *She was contacted by PARSONS who requested that she take a drive with him.*

8

*PARSONS picked her up at her residence in Westmorland, CA and drove North on Highway 86 until they reached Highway 78. They turned onto Highway 78 and PARSONS was talking to somebody on his phone. They picked up ANGLIN somewhere on Highway 78 and that she (HARRISON) does not know him (ANGLIN), so once he was picked up, ANGLIN was being somewhat secretive around her and wouldn't talk to her about what was going on. She overheard ANGLIN telling PARSONS that he had lost his truck and he (ANGLIN) hopes that his friend doesn't get caught. ANGLIN also said that his legs were sore because he had to run a long way and that there's got to be an easier way to do this than the way that Ritchie's been doing it.* HARRISON stated that she had nothing further to add and the interview was terminated.

21. At 11:22 P.M., TFO Moore and SA Butler interviewed an additional passenger in the vehicle, identified as Jonathan P. ANGLIN. TFO Moore told ANGLIN that he was not under arrest, but he wanted to ask him a few questions to clarify what had happened to his vehicle earlier in the day. ANGLIN stated that he understood this and agreed to be interviewed. Upon interviewing ANGLIN, he stated the following: *ANGLIN initially stated that his stepfather's truck had been stolen in the Superstition Mountain OHV area earlier in the day.* (Agent's note: This area is approximately 30-40 miles south of where ANGLIN was picked up and when asked about this, ANGLIN modified his statement and stated the following) *ANGLIN stated that he had reported the 1992 Ford stolen, but it was in fact never stolen. He found the bundles in the desert. He knew they contained marijuana and he picked them up and put them into his vehicle. ANGLIN and an individual he identified as Richard ORMAN were traveling south on a dirt road that parallels the railroad tracks in Ocotillo Wells. ANGLIN was driving the 1992 Ford pickup truck and ORMAN*

9

*was in the passenger seat. Upon observing the marked BLM Ranger unit he (ANGLIN) panicked because he had the "weed", did a U-turn and attempted to flee from the Ranger. ANGLIN saw the emergency lights and the marked police vehicle chasing him. He drove the vehicle to the outskirts of the private compound and "bailed and ran". He jumped the fence into the compound and continued to run. He lost Ritchie (Richard ORMAN) in the desert and called Leslie PARSONS to pick him up along Highway 78.* TFO Moore then asked ANGLIN if he had actually found the marijuana in the desert. ANGLIN then stated *"This is what happens when you do a friend a favor, you get screwed."* ANGLIN then asked TFO Moore what was going to happen to him. TFO Moore advised ANGLIN that based on what he had stated that he was going to be placed under arrest for transportation of marijuana. ANGLIN asked "so I'm going to jail?" TFO Moore advised ANGLIN that he was in fact now under arrest and placed him in handcuffs. TFO Moore began to advise ANGLIN of his Miranda rights at which point ANGLIN stated "I'm not going to answer any more questions." The interview was then terminated. During a search incident to arrest, one "Samsung" cellular telephone was removed from his person by TFO Moore and retained as evidence.

22.  On November 22, 2007, at approximately 2:51 A.M., Jonathan P. ANGLIN was transported to the Imperial County Jail where he was booked into custody. ANGLIN was subsequently released on bond and the case is being reviewed by the Imperial County District Attorney's Office.

**Prior to departing the scene, I received the following items:**

a. Blue in color "Samsung" cell phone, without photo capability. Serial Number: **RV6XB17459F**. This phone was recovered from the person of Jonathan ANGLIN on scene by TFO Moore. The phone is currently being retained as evidence and is secured at the Drug Enforcement Administration, Imperial

County District Office.

## IV
## **DESCRIPTION OF PROPERTY/ITEMS TO BE SEARCHED**

23. This affidavit is in support of a search warrant for a cellular telephone, as more fully described in Attachment A, which is attached hereto and incorporated herein by reference. The phone is currently in the possession of the U.S. Department of Justice, Drug Enforcement Administration.

## V
## **DESCRIPTION OF PROPERTY/ITEMS TO BE SEIZED**

24. Based on my experience and training, consultation with other Special Agents experienced in controlled substance and financial investigations, and all the facts and opinions set forth in this affidavit, I believe that the following items to be seized, as more fully described in Attachment B, which is attached hereto and incorporated herein by reference, will be found on the cell phone to be searched.

25. The items to be seized from the cellular phone are electronic data that constitute evidence of the commission of a criminal offense, and electronic data that is and has been used as the means for committing a criminal offense. The specific criminal offenses involved are violations of Title 21, United States Code, Section 841(a)(1), Possession of a Controlled Substance with Intent to Distribute and Title 18, United States Code 2 (Aiding & Abetting) and Conspiracy to Possess Marijuana with Intent to Distribute, as defined in 21 United States Code, Section 846.

# VI
# CONCLUSION

26. Based on the facts contained in this affidavit and my experience and training, I submit that there is probable cause to believe that one blue in color "Samsung" cell phone, without photo capability, Serial Number: **RV6XB17459F** contains evidence of violations of Possession of Marijuana with Intent to Distribute, as defined in Title 21, United States Code, Section 841, Aiding and Abetting, as defined in Title 18, United States Code, Section 2, and Conspiracy to Possess Marijuana with Intent to Distribute, as defined in 21 United States Code, Section 846. I hold these beliefs based on the following:

   a) Based on statements made to me by Leslie P. PARSONS and Jonathan ANGLIN on November 22, 2007, this telephone was utilized by ANGLIN to contact PARSONS to arrange transportation from the scene, while ANGLIN was fleeing from law enforcement officers, therefore this telephone was utilized in the furtherance of criminal activity. I believe that this telephone contains data which would corroborate statements made by PARSONS and ANGLIN.

   b) When ANGLIN was arrested, he stated that a co-conspirator, identified as Richard ORMAN was with him when he was transporting the marijuana, but ORMAN fled the scene on foot. Additionally, Ranger Ryfa reported that there were two suspects in the Ford F-250 as it was being pursued and evidence on scene indicated that two suspects had fled the suspect vehicle on foot. Therefore, I believe that this telephone contains information which could be

utilized to identify additional perpetrators and co-conspirators involved in the transportation of marijuana.

27. I believe that the above-described property/items to be seized will be found when this warrant is served, and, based on the above-listed probable cause, I specifically request authority to seize the items described above and as more fully described in Attachment B, which is attached hereto and incorporated herein by reference.

28. I, or any other duly authorized federal agent, will personally serve the warrants requested above, and will be assisted by other duly authorized federal investigators.

This Affidavit is based on reports, documents, and notes furnished to Drug Enforcement Administration Task Force Officer Craig Moore.

CRAIG MOORE
Task Force Officer
U. S. Department of Justice
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO BEFORE THIS 3rd DAY OF APRIL 2008.

PETER C. LEWIS
United States Magistrate Judge